Good morning. My name is Jerome Kuh. I'm an Assistant Federal Public Defender in the Western District of Washington, and I represent the petitioner in this habeas case, Rashad Babbs. I would like to reserve five minutes of my time for rebuttal, and I'll keep track. The Court has basically laid out the terrain here where you want to hear first on the jurisdictional issue. The jurisdictional issue was raised by the government in its brief, and basically was saying that Mr. Babbs' notice of appeal was submitted and filed out of time, as required by Rule 4. Our contention is that what the docket makes clear, and what the government's argument did not make clear, was that, yes, in fact, Mr. Babbs, and I'm not exactly sure how Mr. Babbs learned of the magistrate's ruling, but Mr. Babbs did send off to the Court a notice of appeal during the time that the magistrate's order was pending, but had not been ruled on by the District Court. Interestingly, that notice of appeal gets filed on July 27th, this is in 2011, on the same date as the order adopting, the District Court's order adopting the magistrate's ruling. It's the same date. A number of hours beforehand. That appears to be correct, although I don't know exactly how mechanically it was done. It appears to have been done first, just from the order in the docket. The Court the next day, or in fact, that day, after the order was docketed, the Court on its own cites a notice of docket text modification, and this is all, of course, in the docket, which is the last entry in our record. A notice of text modification to the notice of appeal, and it added the order being appealed, and that order was the order that was filed immediately subsequent to this. That's a change, as I understand it, made by the clerk, right? As far as I can tell, yes, Your Honor. There wasn't a refiling? Well, at that moment, no. Now, the next day, there's the, on the 28th, there is a notice, the U.S.C.A. case number, and for 16 notice of appeal, filed by Rashad Bavs. So there is an entry at that point that at least the case number was changed. But you're not suggesting that the next day, he in fact filed a new notice of appeal? No, I'm not. I am not suggesting that. Because even though we've got these things going on in the docket by the clerk of either the District Court or the Court of Appeals, his notice of appeal came from the magistrate judge's report and recommendation. He never filed a notice of appeal after the district judge affirmed the magistrate. No, he did not, Your Honor. And we would contend that the reason he did not was that the docket would not have given him any notice that he had to. At the time that, say he reviewed the docket on the 28th or 29th of July, what would he have seen? And he would have seen that the clerk had noted the notice of appeal to the U.S.C.A. in some appropriate order after filing the notice. And then from the docket, which would have been Mr. Bavs' only access as a prisoner to the docket, the docket shows that on the 28th the notice of appeal was either filed or there was some filing on that notice. So from Mr. Bavs' perspective, and I was thinking about this, you know, maybe even from Mr. Bavs' head counsel at the district court level, I don't know that, and this is always the problem with putting yourself in the position of someone else, I don't know that I really would have known, noticed that Mr. Bavs' notice was on time. Counsel, could I interject a question, please? If Mr. Bavs had looked at it, or if Bavs had looked at it, you don't know that they would have understood that it wasn't a notice of appeal. Is there any evidence in the record that Mr. Bavs or his counsel looked at the clerk's entry and was misled by it? No, there is no evidence. And, of course, it would be evidence of a negative in the sense that it either would be, I guess, if the counsel had made some note, but we don't have any note like that. But someone could give an affidavit. I guess that is correct, Your Honor. There's no evidence of that. So aren't we in the judicial realm where we have to take it on this record that there's no evidence anybody was misled by the entry? Your Honor, I think you have to take it on, there is no evidence in the record. I think the docket speaks for itself. I think the docket would have provided notice of the appeal, that the appeal had been filed and that the appeal was timely filed. If there are no other questions on that, it's a complicated, it's one of those moments that you wish had not happened, to be honest. Not too much law on it. No. The Serena precedent in our circuit is just a published order, very short. When I saw the government's argument, all I went back to was my first day in law school and learning about civil procedure and that the purpose of the rules of civil procedure was to provide notice. And this provided notice to all the parties. Would you like to turn? I would like to turn. Your Honor. Under Bruton and Batson. Yes. And primarily certified. I would like to concentrate, of course, on the certified issue. And I don't know, I'm prepared to answer any questions on the Batson issue. But on the Bruton issue, the district court erroneously decided that Mr. Babs had not proven that the introduction of the statements against him of his non-testifying co-defendant violated a clearly established federal right. And that clearly established federal right is under the Bruton, Richardson v. Marsh, and Gray v. Maryland trilogy. Not one of the cases, by itself probably, created the right. All three of them together. The big question here, I think, is clear. Is there is a note in or a comment in Richardson that says that the court isn't, has no, and that is the thing that the courts below have latched on. What about Gray? I mean, in Gray we had the written statement had blanks for two or three different names. And the officer who testified when talking about the statement from the stand in front of the jury said, I was there with delete, delete, delete. He used the words delete. And the Supreme Court said that doesn't pass muster under Bruton. But in a footnote, Justice Breyer says, suggests in dicta that it would have been fine if he had said me and a few other guys. And isn't this the me and a few other guys case? Well, I don't believe it's the me and a few other guys. It's the me and the one other guy case. Importantly, that was dicta. And what I think has happened, you bring up Gray, and I think Gray is really important, because I think Gray offers an important insight into Richardson, because what Gray says is that a statement redacted in the way that the Gray statement was redacted still is a facial, facially implicates the defendant. And so even though it's redacted, it fails to protect the defendant from the Bruton concern misuse. Now, in this case, it's our contention that the confession is redacted still facially implicates Mr. Babbs. You don't get to whether or not the pronoun substitution is appropriate unless it does not facially implicate Mr. Babbs. I don't think the Richardson court stated that simply substituting can avoid the facial implication issue. And critically here, the district court doesn't even examine that issue. It just says Gray is the last word. Gray, it concludes, did not comment on Richardson. I would contend Gray did comment on Richardson by saying that where the confession facially implicates the defendant, it's still a problem and that that's the law. Bruton said that the facially implicating statements violate the Sixth Amendment right to confront. Richardson, by saying a statement that does not implicate the defendant at all, can't really invoke a real Sixth Amendment right because what is the thing that's being confronted? And that's kind of a nothing in that case. And that the fear of misuse of the confession at that point can be cured by a jury instruction. In this case, as in Gray, we have a confession that still facially implicates the defendant. There's only one person, one other person sitting at counsel table. In the second trial, the evidence was introduced that Mr. Hicks, the non-testifying co-defendant, had in fact identified the person that was with him, to conclude, as in Gray, that the non-testifying co-defendant had in fact named. I want to move on quickly to Bruton on this. I'm sorry, the Batson issue. And basically our contention, which I think is pretty clear, is that the judge erred in the third step of the Batson-Miller-El procedure for assuring that Mr. Babs got a jury that was fair because it did not investigate at all the pretextual nature of the strike and it did not really take into account at all the fact that a similarly situated juror, who was not of color, was left on the panel. There was no inquiry. There was no investigation. So basically the court abdicated, and I say this in a legal pejorative sense, but not in a personal pejorative sense, that the judge has abdicated its role. It had a role and it didn't play it. And three justices agreed with you in the state court on this? Exactly, Your Honor. That's one of those things that always it's kind of like reasonable doubt when you get a dissenting opinion. But isn't a dissenting opinion by a judge, shouldn't that be a reasonable doubt? And a few. But, Your Honor, I only have a minute and a half left, and unless I have other questions I would like to reserve the rest of my time to rebut. Good. Thank you. If there are questions, we can give you a little extra time. No questions. Thank you, sir. Mr. Sampson for the state. May it please the Court, John Sampson, Assistant Attorney General, Further Respondent. Your Honor, addressing the jurisdictional issue first, the notice of appeal was filed by Mr. Babbs before the entry of the order dismissing his petition. It identified an order that did not exist. It sought to appeal from a July 15th order, which was the date that the report and recommendation was noted for, but the actual order was not entered until July 27th. The notice of appeal was received by the district court on the 26th, the day before the order dismissing the petition was entered, and then it was docketed twice, both before and after the entry of the actual order dismissing the petition. And under this Court's decision in Serena, and under the Rule 4 of the Rules of Appellate Procedure, the notice of appeal, since it was filed before the district court's order that was appealable, because it was filed before that order, it was premature and it did not give this Court jurisdiction to hear this appeal. And there was reference to the fact that Mr. Babbs had counsel, but the filing of this notice was done pro se, wasn't it? It was done pro se, and Mr. Babbs recognized that his counsel had effectively abandoned him before this time because he had stopped communicating with him, and therefore he filed it pro se, recognizing his counsel was no longer representing him. He also, there's not an issue that Mr. Babbs was confused as to whether the report and recommendation was a final order, which would be an exception to this, to the rule, because he indicated both in Supplemental Excerpts of Record 2 and 4, he recognized that the report and recommendation was subject to objections and that there would be an order dismissing the petition. But is there precedent from us or from the Supreme Court that says that in this jurisdictional context that a pro se party doesn't get cut any more slack than a counsel party? There's precedent that in construing a pleading as to whether a pleading constitutes a notice of appeal, they are given a more liberal reading than somebody who is represented by counsel, but as far as the timing, the timing of the notice is the one strictly construed jurisdictional issue, and if the notice of appeal is filed either past the 30 days period or it is filed prematurely as occurred in this case, that is my understanding is strictly construed, and you cannot liberally construe a pleading otherwise. And I would submit that the action by the clerk to simply redocket the notice of appeal was not sufficient because it is an action by the court, not an action by the petitioner. It would be the equivalent of filing a notice of appeal shortly after you file your complaint. That is not sufficient to preserve your rights. Moving on to the two substantive issues, Your Honors, this case does come before the court under AEDPA and the deferential standards of 2254D, and to obtain relief, of course, he has to show that the state court adjudication was an unreasonable application of Supreme Court holdings. In this case, in the Bruton error, there are three Supreme Court cases, Bruton, Richardson, and Gray. In Richardson, the court said they are expressing no opinion on the miscibility of a confession where the defendant's name has been replaced by either a symbol or a neutral pronoun. In Gray, the court answered one of those two questions. They answered the situation where it's redacted with a symbol or an obvious deletion, such as a blank space or the word deleted. Gray never addressed the use of a neutral pronoun. In Dicta, Justice Breyer did talk about the use of a plural pronoun, other guys. Here we have a situation with a singular pronoun, other guy. The Supreme Court has not addressed that particular use, and the circuits are arguably at least split on this issue. This court in U.S. v. Peterson suggested that Gray overturned prior case law and that pronouns are no longer available, but the Eighth Circuit has reached an opposite conclusion in United States v. Logan, as well as the Tenth Circuit, and I believe the Eleventh Circuit as well. So we have no Supreme Court holding that says you cannot use a singular pronoun such as other guy. We have a split, at least in the circuits, as to whether that's available. The state court's decision that this was not a violation of the Bruton rule was at the very least not an unreasonable application of the three Supreme Court holdings that exist in this case. And I would point out that Bruton itself was a narrow exception to the general principle that a jury follows its instructions. So when a jury is instructed, do not use this evidence against a co-defendant, Bruton carved down a narrow exception because in Bruton, the statement named Bruton as the other person. Richardson's case falls outside of this narrow exception, and then Gray said when it's an obvious deletion, such as the word deleted or a blank space, that is grammatically the same as naming the person. The different situation occurs, or at least the state court can reasonably determine, a different situation occurs where it's a neutral term such as other guy. I'd also point out, finally, on this part, that in the second trial on the charge of attempted murder, there was testimony at Excerpts of Record 529, lines 8 to 10, that Hicks, when he was referring to the other guy, kept referring to this second person. As an anonymous person, he wasn't referring to him by name. So at least in the second trial in the attempted murder charge, the jury was informed that this other guy wasn't really named. So at least at that trial, it was even farther removed from Bruton or Gray. Well, the last reasoned decision here is the state court of appeals. Yes, Your Honor. And the state court of appeals got the law wrong, didn't it, when it said that the Supreme Court had decided that the use of pronouns was okay? I would say that they got the law wrong, if you read it that way, yes, Your Honor, because Bruton didn't obviously hold that. I think that what the state court was trying to say was that Bruton doesn't prohibit the use of pronouns. For instance, United States v. Logan, the Eighth Circuit said it's fine, and the Tenth Circuit said it's fine to use the term another person. So if you read it strictly and say that Bruton authorizes this, that is wrong. But to say that the Constitution, the Supreme Court has held that the Constitution prohibits the use of this term, I think that that's reasonable. And, again, it's not whether the state court was wrong, it's whether they were unreasonable. Moving to the Bastin claim, and I apologize that I didn't prepare enough for this, but I do have a couple points to make. In this case, the trial judge determined that there was a prima facie showing of potential discrimination from the removal of the African-American juror, and the judge required the prosecutor to come forward with race-neutral reasons for the use of the peremptory. And the prosecutor said there were three reasons. One, the juror had a master's degree, which suggests that they would be more compassionate and would be harder for the state to prove guilt. Did the prosecutor or the judge know what the master's degree was in? So is a biophysicist compassionate because he has a master's degree or only a sociologist with a master's degree? Your Honor, I think the prosecutor admitted he wasn't exactly sure what it was in, whether it was in science or another form. But it was an advanced degree, and, therefore, somebody who is more educated may tend to be more on the liberal side of the scale as opposed to conservative. That's the prosecutor's view. I don't know if I agree with that. Having a law degree and working for the state, I guess I would consider myself more conservative. But the prosecutor also indicated that she was a social worker and that she had said a friend or a relative had been arrested and served time. And those three combined suggested that she would not be a favorable juror for the state. But there was a white juror, a non-African-American juror, who was also a social worker who wasn't struck. And there were three non-African-American jurors who had been convicted of crimes, and they weren't struck. And this was the only African-American juror that was left on the panel, and she was struck. Yes, Your Honor. And what the report and recommendation of the magistrate judge noted was that those other jurors had one of these three categories. This was the only juror with all three of these reasons. It was the master's degree that really pushed it over the edge. Yes, apparently, Your Honor. What this case falls under, and I believe it's Thaler, T-H-A-L-E-R, is the recent U.S. Supreme Court case, and I apologize for not having it, not having briefed this issue. I don't actually have it before me. But it is a case under. . . If I could just interject. We didn't ask you to brief the uncertified issues. So if any member of the panel would like more briefing, we'll issue an order asking you to do a supplemental briefing, and we would, of course, let appellant respond to that. So you don't have to apologize. Go ahead. Thank you, Your Honor. I believe the case is Thaler, and in that case brought under AEDPA, the Supreme Court dealt with a case where it was a juror comparative analysis. You looked at how the prosecutor exercised peripheries as the African American versus other jurors that were not challenged. And the Supreme Court rejected that type of an argument in that case. And that's the same arguments that are being raised here, is that, well, they didn't raise the same challenges to other white jurors. And then the question then becomes, what did the trial judge find? And the trial judge here basically said the prosecutor has read from the same book on juror selection that I've read from. And although the judge came up with somewhat of a summary, a formal of the prosecutor's decision, it is read as a finding that it was a race-neutral reason for the peripheries, and that is a finding that the petitioner has to rebut by clear and convincing evidence since it's the equivalent of a finding of a factual nature. And I would submit that as the district court found, the petitioner has not rebutted that by clear and convincing evidence, and he has not shown that the state court's decision on this was objectively unreasonable. Okay, thank you. Thank you, Your Honors. Okay, then for appellant, do you want to take your rebuttal time? Yes, I do, Your Honor. I don't have very long. I want to repeat that basically what we claim is that Bruton made facially incriminating confessions by non-testifying co-defendants inadmissible because they were so likely to be misused by the jury. The interpreting cases in Richardson and Gray did not change that law, and that facially implicating confessions are still prohibited. There's been a lot of talk about whether certain pronoun usage could possibly make it admissible. There's no evidence that the Supreme Court has never changed its statement in Bruton that those kinds of confessions are not admissible. And, again, we just believe that the judge did not examine the statement of the prosecutor for pretext and that basically Mr. Babbs was denied his right to a full investigation by the court, and we maintain that did violate a clearly established right, especially because the inclusion of the non-testifying co-defendants' statement violated Mr. Babbs' right to confront the witnesses against him, and he did not get a fair jury panel, we urge the court to remand this case to the lower courts for further proceedings. Thank you. Thank you, Your Honor. The case of Babbs v. Frank shall be submitted, as I noted. If the panel wants briefing on the uncertified issue, we'll call for it. Thank both counsel for their kind arguments. The court will take a 10 to 15 minute recess and then continue with Israel v. Estrua, Williams v. FDIC. All rise.
judges: Friedman, Schroeder, Gould